UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RALPH AVELINO AVALOS,<br><br>    Petitioner<br><br>v.<br><br>DAVE DAVEY, Acting Warden,[1]<br><br>    Respondent. | Case No: 11-03022 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Ralph Avelino Avalos ("Petitioner") brings the instant pro se habeas action under 28 U.S.C. § 2254 to challenge his 2007 conviction in the Santa Clara County Superior Court for sexual abuse of a minor. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

## I. BACKGROUND

### A. CASE HISTORY

On January 24, 2007, a Santa Clara County jury found Petitioner guilty of: (1) one count of continuous sexual abuse of a child under 14 (V. Doe) in violation of California Penal Code § 288.5(a); and (2) one count of committing a forcible lewd or lascivious act on a child under 14 (M. Doe) in violation of Penal Code § 288(b)(1). Although Petitioner admitted to having served three prior prison terms, the trial court, on motion of the prosecution, struck one of the three prior prison term allegations.

---

[1] Dave Davey, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

On February 15, 2008, the trial court sentenced Petitioner to a total term of twenty-six years in state prison. This sentence consisted of an aggravated term of sixteen years on the continuous sexual abuse conviction, a consecutive aggravated term of eight years on the lewd and lascivious conduct conviction, and an additional consecutive two-year term for the remaining two prior-prison-term enhancements.

On April 26, 2010, the California Court of Appeal affirmed the judgment in an unpublished, reasoned opinion. Answer, Ex. C.

On July 14, 2010, the California Supreme Court denied review. Dkt. 1 at 9.[2]

Following the denial of review by the state supreme court, Petitioner filed the instant federal habeas corpus petition in this Court. He initially alleged the following claims: (1) sentencing error; (2) prosecutorial misconduct, (3) ineffective assistance of counsel; and (4) improper admission of evidence. Id. at 11.

In response to the petition, Respondent filed a motion to dismiss the petition as a mixed petition on the ground that it contained both exhausted and unexhausted claims. Dkt. 6. In particular, Respondent argued that the only claim properly presented to the California Supreme Court was the claim for prosecutorial misconduct, and that the remaining three claims were unexhausted.

Petitioner conceded that the three disputed claims were unexhausted, and filed a motion to amend the petition to omit the unexhausted claims. Dkt. 10. The Court granted Petitioner's motion and he thereafter filed an amended petition containing only the exhausted prosecutorial misconduct claim. Dkt. 11, 12. The Court denied Respondent's motion to dismiss and directed Respondent to show cause why the petition should not granted. Dkt. 11. Respondent and Petitioner have timely filed a response and Traverse, respectively. The matter is now ripe for adjudication.

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Petitioner.

**B.     STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal ("Court of Appeal" or "state appellate court"):

> A.     *Prosecution Case*
>
> Defendant sexually molested his niece V. Doe repeatedly and another niece, M. Doe, once or twice while they all lived in a house also occupied by the nieces' parents and other family members in San Jose. He also molested both girls in a bedroom of a house in the Merced County city of Los Banos.
>
> M. Doe testified that defendant committed two sexual molestations on her at the San Jose house when she was about five or six years old. On the first occasion, defendant touched her chest and external genital area with his hand over her clothing. On the second, defendant enticed her into a walk-in closet. He hugged her from behind, took off her pants, and simulated sexual intercourse with her while keeping his pants on.
>
> The jury also heard testimony that defendant molested M. Doe in Los Banos. M. Doe testified that defendant touched her chest over her clothing. At the time, she was seven or eight years old. On other occasions, she was on the top bunk of a bunk bed while V. Doe and defendant were lying on the bottom bunk. M. Doe never saw defendant molest V. Doe in such instances, but a detective who interviewed M. Doe testified that M. Doe said that on one occasion when she looked down to the lower bunk she saw defendant on top of V. Doe and heard V. Doe say "'stop.'"
>
> V. Doe testified that defendant molested her regularly, starting when she was seven or eight years old. The first time, defendant and V. Doe were watching television in the living room of the San Jose house. He rubbed V. Doe's external genital area for a few minutes over her clothing. Defendant did the same thing on a separate occasion when he, V. Doe, and M. Doe were lying on a bed and watching television. In that incident defendant also took V. Doe's wrist and put her hand on his exposed, erect penis. V. Doe was about eight or nine years old at the time.
>
> In addition, V. Doe testified about an incident that occurred in the garage of the San Jose house when she was eight or nine years old. Defendant removed her overalls, but she resisted and put them back on. On another occasion, defendant felt her breasts and external genitalia, apparently over her clothing, as both sat on his bed. On yet another occasion, defendant lay motionless on top of her for a few minutes on a bed. V. Doe was clothed during that incident.

3

On still another occasion, defendant fondled V. Doe's external genital area under her clothing. She described five specific incidents of molestation at the San Jose house and stated that others occurred.

V. Doe testified additionally that defendant molested her more than once in Los Banos. He would do so by lying on top of her in the bottom bed of a bunk bed and simulating sexual intercourse, "'humping'" her and moaning. At times, M. Doe would be present in the top bunk and could overhear the moaning. V. Doe was between the fourth and fifth grades when defendant was engaging in this type of molestation.

The girls' mother, M.F., testified that the girls revealed the molestations to her about three years after they said they occurred. V. Doe, a star student and athlete, had started to show disturbing attitudinal changes regarding school. V. Doe told her mother about the molestations on the eve of completing eighth grade. At the time, M. Doe was having her own problems in school, related to behavior, and she had had to repeat third grade. Later M.F.'s husband called her at work to report that both daughters were crying. She returned home and M. Doe told her that defendant had molested her. The mother learned that M. Doe and V. Doe had each just discovered that defendant had molested the other sister, which explained their crying.

V. Doe testified that when she was in the eighth grade her teacher went on jury duty. On the teacher's return, he recounted to her class that the case involved child sexual abuse charges. This prompted V. Doe to tell her mother about defendant's molestations. She testified that she told her mother first and M. Doe a month after that.

M. Doe testified that when V. Doe told her defendant had molested her, M. Doe told V. Doe that he had molested her too. At V. Doe's urging, M. Doe told their mother about the molestations.

B.   *Defense Case*

Family members testified to one or more of the following circumstances: neither girl was reluctant to play in a closet where one or more molestation incidents allegedly occurred, nor did they seem uncomfortable around defendant, to fear him, or to try to avoid him.

The defense called V. Doe and M. Doe as witnesses on defendant's behalf, and they testified that they did not know a woman named Helen Leyvas, had never told anyone that they were not molested, and had never said that their mother was pushing them to have charges brought against defendant. Leyvas, defendant's aunt, then testified that she had last seen V. Doe and M. Doe about a year before Leyvas's appearance at trial. At that time both girls denied that defendant had

4

> molested them and told her that their mother had persuaded them to invent the accusations. "[T]hey told me, no, *tía* [auntie], he did not . . . do it." Leyvas admitted that she had a long criminal history, was on parole, had committed crimes involving dishonesty and fraud, and had not reported the girls' purported denials to the police or the district attorney's office.

Answer, Ex. C at 2-5.

## II.   LEGAL STANDARD

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless:  (1) the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

The first prong of § 2254 applies both to questions of law and to mixed questions of law and fact.  See Williams (Terry) v. Taylor, 529 U.S. 362, 407-409 (2000).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).  "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue."  Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 76-77 (2006)).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  The federal court on habeas review may not issue the writ "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams (Terry), 529 U.S. at 411. Rather, the petitioner must show that the application of Supreme Court law was "objectively unreasonable." Id. at 409; Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

The second prong of § 2254 applies to decisions based on factual determinations. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the California Court of Appeal's April 26, 2010 decision is the last reasoned decision to address Petitioner's claim of prosecutorial misconduct.

## III. DISCUSSION

### A. BACKGROUND

Petitioner's prosecutorial misconduct claim arises from a brief colloquy between the prosecutor, Deputy District Attorney Jaime Stringfield, and Carl Lewis, the prosecution's expert regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS").[3] At trial, Petitioner attempted to attack the victims' credibility, pointing out that they were neither reluctant to play in the walk-in closet where certain incidents of the alleged molestation took place, nor did they seem uncomfortable around or fearful of Petitioner. Answer, Ex. C at 4.[4] In response, the prosecutor sought to present CSAAS evidence to explain the victims' behavior, including their delay in reporting the abuse, secrecy, helplessness, and accommodation. Answer, Ex. E (vols. 4-5), Reporter's Transcript ("RT") 390-398. The trial court allowed the CSAAS evidence, and certified Mr. Lewis as an expert in the area of CSAAS. RT 398-399.

Mr. Lewis testified that he was a police officer and "the supervisor of the sexual assault and domestic violence unit for the investigation bureau" of the Santa Clara County District Attorney's Office. RT 390-391. At the time of trial, he had been an investigator at the district attorney's office for "[a] little over eight years," had training from a variety of professions that "have some responsibility for at least intervention in child sexual abuse cases," had vast experience investigating numerous cases of alleged child abuse, and had provided expert testimony about CSAAS some 145 times. RT 391- 392, 397. Mr. Lewis was aware of neither the facts nor the charges in the case, RT 398, and his knowledge of CSAAS was based largely on the work of a psychiatrist named Dr. Roland Summit, RT 402.

---

[3] CSAAS "describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse." Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003).

[4] At the time of trial, V. Doe was 17 years old, RT 232, and M. Doe was 15 years old, RT 143.

  Mr. Lewis testified that sexually abused children often keep the facts secret, feel helpless, delay disclosure, accommodate the abuse, and sometimes retract their reports. RT 403-411.  He further testified that Dr. Summit emphasized that CSAAS was not "diagnostic" of sexual abuse, and that it would be improper to rely on CSAAS to determine whether sexual abuse had occurred in a particular case.  RT 401-402, 411. Instead, he explained that CSAAS can educate the trier of fact "that a child who is disclosing having been sexually abused may not look or act like our preconceived ideas of what a child of sexual abuse would look or act like."  RT 401.

  At the end of Mr. Lewis' examination by the prosecutor, the following exchange took place:

> Q: . . . IN YOUR EXPERIENCE IN INVESTIGATING CHILD SEXUAL ASSAULT CRIMES, DOES EVERY CASE BRING WITH IT IDENTIFIABLE PHYSICAL SIGNS OF MOLESTATION?
>
> A: NO.
>
> *Q:* <u>IN YOUR EXPERIENCE IN THIS COUNTY, HOW FREQUENTLY HAVE YOU SEEN A NON-OFFENDING PARENT PROSECUTED FOR SEXUAL ASSAULT AGAINST THEIR CHILD?</u>
>
> *A:* <u>I HAVEN'T</u>.
>
> MS. STRINGFIELD:  I HAVE NOTHING FURTHER.

RT 446 (emphasis added).  This exchange forms the basis of the instant prosecutorial misconduct claim.

  On appeal, Petitioner alleged that the prosecutor violated his right to due process by eliciting impermissible testimony from Mr. Lewis in order to offer her "personal assurance of appellant's guilt," in violation of his right to due process.  <u>Id.</u> at 23.  The Court of Appeal agreed with Petitioner that, under state law, the prosecutor's question was improper.  The court explained its reasoning as follows:

> "'It is, of course, misconduct for a prosecutor to "intentionally elicit inadmissible testimony." [Citations.]'" (<u>People v. Smithey</u>, <u>supra</u>, 20 Cal. 4th at p. 960.)  So also is it to do so negligently.  There is no requirement that "a prosecutor must act with a culpable state of mind.  A more apt

8

> description of the transgression is prosecutorial error." (People v. Hill (1998) 17 Cal. 4th 800, 823, fn. 1.) Any suggestion by the prosecution, through the prosecutor's remarks or through testimony the prosecution elicits through an ill-advised question, that the state would not prosecute the innocent is misconduct. In such a case, the prosecutor is vouching for the defendant's guilt. "[I]t is misconduct for prosecutors to vouch for the strength of their cases by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation *of their office*, in support of it." (People v. Huggins (2006) 38 Cal. 4th 175, 206-207, italics added.)
>
> Thus, it was a mistake to ask this question and quite likely improper to do so. Although defendant was not a parent, he was the victims' uncle, and asking the question was negligent in that one possible answer to it would skate too lose to assuring the jury that the district attorney would not prosecute an innocent family member based on claims by minors that he abused them sexually.

Answer, Ex. C at 12.

Despite finding the prosecutor's conduct improper, the state appellate court rejected Petitioner's due process claim on the ground that he failed to show prejudice. The state appellate court stated:

> . . . the standard of review on appeal regarding defendant's federal due process claim requires us to examine whether the trial was made fundamentally unfair as a result of the untoward question. (See People v. Morales (2001) 25 Cal. 4th 34, 49, fn. 10; People v. Sanders (1995) 11 Cal. 4th 475, 550.) As for state law, "[a] violation of state law . . . is cause for reversal [only] when it is reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the untoward [question]." (People v. Pigage (2003) 112 Cal. App. 4th 1359, 1375.) The latter, of course, is an instance of the general prejudice standard set forth in People v. Watson, supra, 46 Cal. 2d at p. 836.
>
> Considering the state-law prejudice inquiry first, we find no prejudice. The victims' testimony was compelling and detailed. The testimony about the circumstances under which they eventually revealed defendant's sexual abuse of them – tearful behavior accompanying their revelations to their mother – showed sincerity and thereby lent additional credibility to their accounts of the abuse. Their mother's testimony about their school-related problems lent still more credibility to their testimony, particularly the difficulties of V. Doe, who had gone from being an academic and athletic star student to a troubled one. Against this, the question the prosecutor asked of Lewis, though ill-advised and negligent, could not have affected the outcome under the state-law standard of review for prejudice.

9

> <u>The record does not show that the answer constituted the explosion of an evidentiary bombshell that would distract the jury from its task of ascertaining defendant's guilt on the facts involving him rather than guilt by association.</u>
>
> As for defendant's federal due process claim, to judge whether the prosecutor's question and the response it elicited rendered the trial fundamentally unfair we must consider the colloquy for its own absolute effect and the nature of the rest of the trial. <u>The question was both fleeting and ambiguous, and the answer, which was also fleeting, could do no more than rest on the ambiguous nature of the question. The prosecutor did not seek to exploit the testimony at closing argument. Thus, the colloquy amounted to a minor glitch in the trial, one that worked to defendant's disadvantage and should not have occurred, but it did not, in itself, render the trial fundamentally unfair in violation of due process</u>. If the rest of the trial had already been tainted by various instances of unfairness, this question could have tipped the balance in the direction of fundamental unfairness. But the rest of the trial was not so tainted. Defendant was "entitled to a fair trial but not a perfect one." (<u>People v. Osband</u>, <u>supra</u>, 13 Cal. 4th at p. 702.) The trial's evidentiary phase was not free of error, but the procedures were fair at the fundamental level, and because "fundamental fairness [is] the touchstone of due process" (<u>Gagnon v. Scarpelli</u> (1973) 411 U.S. 778, 790), due process was afforded to defendant.

Answer, Ex. C at 12.

In the instant action, Petitioner alleges that the prosecutor violated his due process right to a fair trial by eliciting allegedly inadmissible testimony from Mr. Lewis. In particular, Petitioner alleges Mr. Lewis' response to the prosecutor's final question (underlined above) "vouch[ed] for [the] reliability" of the prosecutor's decision to prosecute him. Traverse at 17, Dkt. 12. Petitioner argues that the question and answer were "highly improper and prejudicial because they allowed an employee of the district attorney's office to assure the jurors that the prosecution does not make mistakes when it charges a person with child sexual abuse." Dkt. 12 at 21. According to Petitioner, Mr. Lewis "effectively assured the jury that [Petitioner] was guilty." <u>Id.</u>

10

**B. ANALYSIS**

**1. Federal Law**

A claim of prosecutorial misconduct is not cognizable in federal habeas corpus proceedings unless the misconduct renders the trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986). "[U]nder Darden, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness." Tak Sun Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). "A determination that the prosecutor's questioning was improper is insufficient in and of itself to warrant reversal." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). In assessing whether a prosecutor's misconduct rises to the level of a due process violation, courts have considered : (1) the weight of evidence of guilt, United States v. Young, 470 U.S. 1, 19 (1985); (2) whether the misconduct was isolated or part of an ongoing pattern, Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, Giglio v. United States, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstates or manipulates the evidence, see Darden, 477 U.S. at 182.

Here, the state appellate court, while finding that the prosecutor's question was improper, ultimately concluded that any prejudice to Petitioner was harmless in light of the compelling evidence of Petitioner's guilt. The court noted that the victims had provided compelling, detailed and credible testimony, which included the circumstances under which the abuse was revealed to their mother and their school-related problems these victims experienced post-abuse.[5] Details of the abuse also were provided. V. Doe testified at trial that Petitioner molested her regularly beginning when she was seven or

---

[5] The state appellate court relied on the harmless error standard in Watson, which is the same as the Brecht "actual" prejudice standard applied in habeas proceedings. See Bains v. Cambra, 204 F.3d 964, 971 n.2 (9th Cir. 2000).

11

eight years old, and provided specific details as to five incidents at the San Jose house. RT 236-280. V. Doe also testified as to additional incidents of molestation by Petitioner, which took place at the Los Banos house. RT 268-276. Meanwhile, V. Doe's younger sister, M. Doe, testified that Petitioner molested her twice when she was five or six years old, giving specific details about one occasion at the San Jose house and another occasion at the Los Banos house.[6] RT 144-166, 172-73, 205, 211.

Moreover, aside from the compelling evidence of Petitioner's guilt, the state appellate court found that the disputed question at issue and the answer provided by Mr. Lewis did not distract the jury from its task of ascertaining Petitioner's guilt "on <u>the facts involving him</u> rather than guilt by association." Answer, Ex. C at 13 (emphasis added). The jury was repeatedly instructed by the trial court that the only proper basis for a verdict was the evidence presented at trial, i.e. the victims' testimony, as opposed to the testimony at issue from a witness who had no knowledge of the facts of the case. <u>See</u> CT 390, 396. The jury is presumed to follow the trial court's instructions. <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000). As such, the state appellate court's finding that any prosecutorial error did not have a substantial and injurious effect on the outcome of the trial was consistent with—and "not contrary to" the "actual" prejudice standard articulated by the Supreme Court in <u>Brecht</u>. <u>See</u> 507 U.S. at 637.

The above notwithstanding, the Court finds that it was objectively reasonable for the state appellate court to conclude that Petitioner was not denied a fair trial. <u>See</u> Answer, Ex. C at 14. The state appellate court noted that the colloquy at issue was "fleeting and ambiguous," and that the prosecutor did not seek to exploit the testimony at closing

---

[6] The state appellate court's opinion states that M. Doe testified about three incidents of molestation; however, the record shows that she testified only about <u>two</u> such incidents. Compare RT 205-208, 223 with Answer, Ex. C at 2-3. Both occurred over a span of a few weeks when M. Doe was between five to six years old. RT 204, 208. M. Doe admitted to confusing the details about these two incidents. RT 145, 205, 211. Initially, she testified that both incidents took place at the San Jose house, RT 145; however, she later testified that one incident took place in a walk-in closet at the San Jose house, RT 211, and the other in a room with bunk beds at the Los Banos house, RT 172-173.

1  argument. Id. The state appellate court rejected Petitioner's assertions that the colloquy
2  was tantamount to personal assurance by the prosecutor of Petitioner's guilt, given that she
3  did not make any further references to it at trial. Id. In fact, the record shows that it was a
4  brief and isolated instance in the prosecutor's otherwise lengthy direct and redirect
5  examinations of Mr. Lewis. RT 390-413, 444-446. The state appellate court added that
6  the colloquy was a "minor glitch" in a trial that had not been tainted by various instances
7  of unfairness. Answer, Ex. C at 14. As the state appellate court concluded, due process
8  was afforded to Petitioner because the procedures were "fair at the fundamental level . . . ."
9  Id.; Ortiz, 149 F.3d at 934 ("Where an allegedly improper question is an isolated or one-
10 time incident, [the Ninth Circuit] consistently has refused to find a due process
11 violation.").

12       Petitioner has neither shown that the prosecution's case regarding lewd acts on V.
13 Doe and M. Doe was weakened nor that the presumption of his innocence was seriously
14 undermined by the colloquy at issue so as to render the proceedings fundamentally unfair.
15 See Ortiz, 149 F.3d at 934-35 (prosecutor's questioning witness as to whether she was
16 afraid of defendant did not render proceedings fundamentally unfair in light of witness'
17 other testimony that defendant murdered her mother, stabbed her sister, stabbed her, and
18 then tried to burn down their house while victims were still inside); cf. United States v.
19 Shwayder, 312 F.3d 1109, 1121 (9th Cir. 2002) (holding that, on cross examination of
20 character witness for defense, use of hypothetical questions assuming defendant's guilt of
21 crimes for which he is being tried undermines presumption of innocence and thus violates
22 due process), amended, 320 F.3d 889, 890 (9th Cir. 2003), cert. denied, Shwayder v. U.S.,
23 540 U.S. 826 (2003).

24       At bottom, Petitioner has failed to establish that the state appellate court's rejection
25 of his prosecutorial misconduct claim was contrary to, or an unreasonable application of,
26 clearly established United States Supreme Court precedent, or that it was based upon an

unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2). Therefore, this claim is DENIED.

### IV. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's prosecutorial misconduct claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

### V. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Amended Petition for Writ of Habeas Corpus is DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk shall enter judgment, close the file, and terminate any pending matters.

IT IS SO ORDERED.

Dated: 9/17/14

SAUNDRA BROWN ARMSTRONG
United States District Judge

14

P:\PRO-SE\SBA\HC.11\Avalos3022.denyHC-final091014.docx